## SCHUYLER et al. v. LACY et al.
### No. 4497.

Court of Civil Appeals of Texas. Texarkana.

Jan. 23, 1935.

Rehearing Denied March 7, 1935.

Brachfield & Wolfe, of Henderson, for appellants.

Smith & West, of Henderson, for appellees.

JOHNSON, Chief Justice.

Plaintiffs sued defendants in trespass to try title to recover 5 acres of land described in Rusk county. Plaintiffs are the sole heirs of W. H. Brown, H. L. Allen, George Lacy, and Clark Lee, all deceased. Defendants compose the trustees of the Lee District Graveyard Association and persons claiming mineral interests in the 5 acres of land under conveyance from said association. Defendants answered by plea of not guilty, and specially pleaded that in the purchase of the land evidenced by deed dated January 26, 1895, from John Preston to said W. H. Brown, H. L. Allen, George Lacy, and Clark Lee, said grantees purchased the same with funds furnished by various members of the

community in which they resided, for the purpose of establishing a graveyard, to be known as the Lee District Graveyard, and that said grantees were acting as trustees for said cemetery association; that the title was taken in the name of said grantees, who then recognized the title to the land as belonging to the community and being vested in the cemetery association. Defendants further pleaded the statute of ten years' limitation. Trial was had to a jury. At the close of the evidence, each side, plaintiffs and defendants, moved the court to instruct a verdict in their favor. The court overruled the motion of defendants, and granted the motion of plaintiffs. Judgment was entered on the instructed verdict for plaintiffs. From an order of the court overruling defendants' motion for new trial, defendants have perfected this appeal.

■ Appellants' first proposition presents the following matter: In appellants' bill of exception taken to the action of the court in overruling their motion, and in granting appellees' motion, for an instructed verdict, it is recited that the trial judge, at the time of ruling upon the motions, "announced that whereas both plaintiffs and defendants had filed a request for the court to instruct the jury to return a verdict in their favor, and that such request thereupon took same out of the hands of the jury, and by both parties filing such requests that it was a waiver of their right to a trial by jury." The announcement of the learned trial judge was substantially in accord with the holdings of Jeffers v. Brewer (Tex. Civ. App.) 266 S. W. 1110; Tiblier v. Perez (Tex. Civ. App.) 277 S. W. 189; Mendlovitz v. Samuels Shoe Co. (Tex. Civ. App.) 5 S.W.(2d) 559, that request of both parties for an instructed verdict in effect withdraws the case from the jury and leaves it to be determined by the trial court. But writs of error have been denied by the Supreme Court in cases holding to the contrary, Citizens National Bank v. Texas Compress Co. (Tex. Civ. App.) 294 S. W. 331; Miller-Vidor Lbr. Co. v. Schreiber (Tex. Civ. App.) 298 S. W. 154; Hunter v. Grant (Tex. Civ. App.) 41 S. W.(2d) 245, 248; which decisions follow the reasoning expressed by the Supreme Court in Eberstadt v. State, 92 Tex. 94, 45 S. W. 1007, 1009. So the rule in Texas appears to be settled that in trial of a case to a jury neither party, plaintiff or defendant, waives his right to have conflicting evidence upon material issues determined by the jury, by requesting an instructed verdict, though the opposing party has made a like request. In Hunter v. Grant, supra, it is said:

"We conclude that the submission of the peremptory instruction by both plaintiff and defendant did not preclude a trial by jury, if the facts adduced on the trial showed a conflict."

However, the trial judge's assignment of an unsound reason for directing a verdict is not ground for a reversal, if for other reason the verdict was properly directed, Frias v. Galveston, H. & S. A. R. Co. (Tex. Civ. App.) 266 S. W. 547; for, in order to justify a reversal, it must appear from the assigned issues or upon the face of the record that under no theory of the case was the court warranted in directing a verdict, Cox v. Rio Grande Valley Telephone Co. (Tex. Civ. App.) 13 S.W.(2d) 918; Parmer County v. Smith (Tex. Civ. App.) 47 S.W.(2d) 883; Benson v. Abercrombie (Tex. Civ. App.) 51 S.W.(2d) 431.

■ Under their second proposition appellants raise the point that the action of the trial court directing a verdict was error, because defendants had shown an outstanding title in one R. M. McClusky, by having introduced in evidence a deed of conveyance of the land from plaintiffs to said R. M. McClusky, and by which it is claimed to be shown that plaintiffs parted with their title, if any they had. The record shows that plaintiffs in their petition alleged that they had signed this deed to McClusky, but that it was not a conveyance of plaintiffs' beneficial interest in the land; that it was executed with the intention and under the agreed purpose of passing only a colorable or naked legal title, in trust to McClusky, to be placed of record and then reconveyed to plaintiffs by McClusky, for the purpose of establishing evidence of plaintiffs' inherited interest in the land; and, further, that execution of the purported conveyance to McClusky was procured by certain alleged false and fradulent representations of McClusky to the effect that such was the necessary mode to establish evidence of plaintiffs' inherited interest in the land. Plaintiffs made McClusky party to this suit and prayed that the deed be canceled. Defendants filed special exceptions and plea in abatement to the joinder of the two causes of action, and on motion of plaintiffs the court severed and separately docketed plaintiffs' suit against McClusky and proceeded to trial in plaintiffs' suit against appellants. In the trial appellants introduced the deed from plaintiffs to McClusky. Whereupon plaintiffs introduced evidence,

undisputed, establishing the alleged invalidity of the deed for the reasons alleged. To defeat plaintiffs' right to recovery by proof of an outstanding title, it was incumbent upon appellants to show such title to be valid, Holland v. Nance, 102 Tex. 177, 114 S. W. 346; McBride v. Loomis (Tex. Com. App.) 212 S. W. 480. That the naked legal title held in trust by McClusky under the deed remains uncanceled is not a bar to plaintiffs' recovery in this suit. In trespass to try title plaintiff may recover upon proof of superior equitable title. Texas Creosoting Co. v. Hartburg Lbr. Co. (Tex. Com. App.) 16 S.W.(2d) 255.

■■ By their third proposition appellants raise the point that they had introduced evidence, which should have been submitted to the jury, in support of their allegations that W. H. Brown, H. L. Allen, George Lacy, and Clark Lee, in procuring the deed from John Preston, were acting as trustees for said cemetery association. In this respect the record in substance reveals that John Preston is the common source under whom plaintiffs and defendants claim title; that on January 26, 1895, John Preston by general warranty deed conveyed a tract of 46.7 acres of land to W. H. Brown, H. L. Allen, George Lacy, and Clark Lee for a recited consideration of $32 cash and one vendor's lien note for $50 due November 15, 1895; that said Brown, Allen, Lacy, and Lee, on December 23, 1895, conveyed the same land (except 5 acres reserved) to one Rich Lee for a recited consideration of $25 cash and $25 in twelve months and $25 in twenty-four months from date. The reservation mentioned is recited in said deed in the following terms: "But there is reserved from this sale five acres on the South boundary line of the above tract to be selected and designated by the grantors herein, but the same is to be selected so as to include the graveyard which is now on said tract."

It is shown that the grantors later surveyed and by marked boundaries designated the 5 acres so reserved from their coveyance to Rich Lee, which are the 5 acres in controversy. A graveyard for the burial of colored people is shown to be located on the 5 acres, consisting of approximately 2 acres of land, inclosed by a wire fence marking its boundaries for more than twenty-five years. About one-half the graveyard is occupied by graves. The 3 acres of land outside the graveyard is unfenced timber land.

Appellants' witness, Willis Evans, testified that he was present at a gathering of the people of the Lee district when the subject of buying the graveyard plot was up; that they then appointed Willis Brown, Fayette Allen, Clark Lee, and George Lacy to go buy the land, and they did; that they reported back what it would cost to buy the land; and that the community then began to give picnics to raise the money or a part of it.

Appellant introduced in evidence pages 15 and 31 of what is testified by appellants' witness, Gilbert Perkins, to be a minutes book of the Lee District Graveyard Association, of which witness testified that he was at one time secretary, and that Fate (H. L.) Allen was at one time secretary, and that he identified page 15 of the book as being in the handwriting of Fate Allen, and page 31 as being in the handwriting of the witness. The minutes referred to, in substance, recited:

"July 26, 1895, we, your committee, met at Henderson, Texas, and made the trade for the graveyard land, paid the sum of $32.00 and gave our note for $50.00, payable October 15, 1895, committee names, as follows, H. L. Allen, W. H. Brown, George Lacy and Clark Lee.

"October 15, 1895, we, your committee, met at Henderson, Texas, and paid last payment on the land and took up our note of $50.00, names of committee as follows, H. L. Allen, W. H. Brown, George Lacy and Clark Lee, we also secured the deed properly.

"December 22, 1895, we, your committee, met at H. L. Allens and sold the remainder of the land to Rev. R. Lee, after taking off five acres for our graveyard purposes, sold for $75.00, payable 1896, $25.00, 1897, $25.00, names as follows, H. L. Allen, W. H. Brown, S. T. Lacy, George Lacy, and Clark Lee, signed H. L. Allen, Sec., signed W. H. Brown, Chairman.

"December 22, 1895, we, your committee, met and adopted that the head of every family shall pay the sum of $1.50 to secure equal rights burying ground in the graveyard, names of committee as follows, H. L. Allen, W. H. Brown, S. T. Lacy, George Lacy and Clark Lee.

"March 4, 1896, we, the members of our community at Charles Nolons, Rev. P. Evans was selected chairman, it was moved and carried that H. L. Allen shall pay $1.50 to secure equal right for burial ground for Rich Cook. * * * We received $25.00 from Rev. R. Lee as payment on land, leaves $50.00 yet to be paid, it was moved and carried that every man in good standing the $25.00 should be divided accordingly to proratta, and it was

done; names as follows: W. H. Brown, $5.-00; Cyrus Lacy, $5.70; Chas. Auston $1.50; Geo. W. Nolan $1.50; Geo. Lacy $3.00; D. Edwards .25; Tom Lacy .25; Chas. Nolan .75; Mart Edmoson .50; H. L. Allen $2.50; Geo. Edwards .50.

"February 4, 189—, $25.00 received from R. Lee, second payment on land, and I paid the balance due the members of the community, and turned the remainder over to our treasurer George Lacy, names that I paid the money to are as follows: [listing fifteen persons and the amount paid to each. The list includes the names of H. L. Allen, W. H. Brown, George Lacy.]"

"August 22, 1902, we, the committee, met at the graveyard, W. H. Brown in the chair, moved and carried that we make some arrangement to fence our graveyard, that we fence 2½, that we have four strands gap wire; we received post from Bro. D. Fillap; moved and carried that we demand the money that R. Lee owes our committee."

Our statutes of conveyances nor the provisions of the "Statute of Frauds" adopted by this state do not prohibit the creation and proof of an oral trust in land, James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743, and subsequent authorities holding that parol trust may be ingrafted upon the legal title as at common law; but "it is against the policy of the law that a written instrument should be shown by parol testimony to have an effect different from that which its terms import, except upon very strong proof." Howard v. Zimpelman (Tex. Sup.) 14 S. W. 59, 62. "Perhaps there is no fact which, in the trial of civil causes, is required to be so satisfactorily proved as that which engrafts a parol trust upon the legal title. * * * Whilst it is not necessary that it should be established beyond a reasonable doubt, nothing must be left to conjecture, nor must presumptions be indulged which are not the usual and almost necessary deductions from the facts proved." King v. Gilleland, 60 Tex. 271. The rule is that the evidence relied upon to ingraft a parol trust upon the legal title, as here conveyed by absolute deed, must be such as will satisfy that high standard of probative force indicated by the expression "clear, satisfactory, and convincing," Elder v. King (Tex. Civ. App.) 69 S.W.(2d) 479; and it is the province of the trial court, in the first instance, to determine whether or not the evidence is sufficient to meet the rule as a matter of law, House v. Rogers (Tex. Civ. App.) 23 S.W.(2d) 414, point 7, and by which rule it is to be reviewed by the Court of Civil Appeals and the Supreme Court, Carl v. Settegast (Tex. Com. App.) 237 S. W. 238.

In making application of the rule above stated to the evidence presented by the appellants, in appeal from a judgment on a directed verdict, the evidence is to be given its strongest probative force consistent with the rule. Clutter v. Wisconsin-Texas Oil Co. (Tex. Civ. App.) 233 S. W. 322, point 4. When considered in the light of the law as above expressed, we are of the opinion that the evidence presented by appellants and relied upon to establish the alleged parol trust sufficiently meets the requirement of the rule as to authorize its submission to the jury and that the learned trial judge was in error in peremptorily directing a verdict for appellees.

Appellants have made other assignments of error, all of which we have considered and which are respectfully overruled.

The appellees have made cross-assignments of error directed at the trial court's finding that the property in question had been dedicated as a public cemetery. These assignments are sustained, for the reason that the pleadings do not present any issue as to dedication of property as a public cemetery.

The judgment of the trial court is reversed, and the cause will be remanded.